USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/5/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARCELLO PORCELLI,

                        Plaintiff,

-v-

JETSMARTER, INC., et al.,

                        Defendants.

19 Civ. 2537 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On February 13, 2019, plaintiff Marcello Porcelli commenced this action in the Supreme Court of New York, County of New York, against JetSmarter, Inc. ("JetSmarter"), a Florida corporation; David Sheridan, a sales agent for JetSmarter; Carla Yerovi, a Supervisor of Member Services for JetSmarter; and John Does 1–5,[1] officers or managers of JetSmarter. Dkt. 4-4 ("Compl.") ¶¶ 1–4. The Complaint alleges breach of contract, violation of the covenant of good faith and fair dealing, unfair trade practices under General Business Law § 349, respondeat superior liability, and fraud.

JetSmarter faces similar complaints brought by JetSmarter members in other jurisdictions. In one such action filed on or about September 5, 2018, plaintiffs brought a demand for class arbitration against JetSmarter with the American Arbitration Association in Fort Lauderdale, Florida.

On March 22, 2019, JetSmarter removed this action to federal court pursuant to 28 U.S.C. § 1332 based upon complete diversity of citizenship. Dkt. 4. Defendants now move for

---

[1] The Complaint and Notice of Removal list John Does 1–5; however, subsequent filings by defendants amend the caption to list only John Does 1–4. The Court draws the list of parties from the Complaint and other initiating filings.

an order compelling Porcelli to arbitrate his claims or, in the alternative, to stay this action pending resolution of the related certified class action arbitration. For the following reasons, the Court grants defendants' unopposed motion to compel arbitration and stays the case pending the completion of arbitration.

## I. Background[2]

### A. The Parties

Porcelli has been a subscriber to JetSmarter's services since on or about November 24, 2015. Compl. ¶ 10. JetSmarter is a corporation that provides various forms of air transportation to customers seeking an alternative to commercial airlines and private jet ownership. *Id.* ¶ 2. The remaining defendants are all employees of JetSmarter. John Does 1–5 are officers of JetSmarter who were responsible for developing and approving marketing and sales materials offered by JetSmarter. *Id.* ¶ 4. Sheridan is a sales agent who initially reached out to Porcelli to market JetSmarter's services. *Id.* ¶ 7. Yerovi is a Supervisor of Member Services. *Id.* ¶ 2.

### B. The Registration Process and the Membership Agreement

Porcelli signed up for JetSmarter's services through a two-step process. First, on November 13, 2015, Porcelli created a profile on the JetSmarter mobile application. Kirsanov Decl. ¶ 5. In the course of creating that profile, Porcelli swiped a button indicating his agreement

---

[2] The Court draws these facts primarily from the Complaint, Dkt. 4-4., the declaration of Mikhail Kirsanov, JetSmarter's Chief Technology Officer, Dkt. 11 ("Kirsanov Decl."), and the July 2018 Membership Agreement binding the parties, Dkt. 11-8 ("2018 Agreement"). Although the 2018 Agreement was neither attached to the Complaint nor referenced therein, the Court considers the 2018 Agreement (and, when necessary, other materials of undisputed authenticity and accuracy that were attached to the parties' submissions) for purposes of this motion. "In the context of motions to compel arbitration brought under the Federal Arbitration Act ("FAA") . . . the court applies a standard similar to that applicable for a motion for summary judgment," *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003), and courts therefore consider materials outside the Complaint, *see, e.g.*, *HBC Solutions, Inc. v. Harris Corp.*, No. 13 Civ. 6327 (JMF), 2014 WL 6982921, at *1 (S.D.N.Y. Dec. 10, 2014).

2

to the "Terms of Use and Privacy Policy." *Id.* ¶ 3(e). These policies provided for mandatory binding arbitration of all disputes. Def. Mem. at 4. Second, on November 24, 2015, Porcelli entered into a Membership Agreement ("2015 Agreement") with JetSmarter and paid the requisite fees. Compl. ¶ 10; Kirsanov Decl. ¶ 7. Like the Terms of Use, the 2015 Agreement also contained a binding mandatory arbitration clause. Def. Mem. at 1. At the time that he entered into the 2015 Agreement, Porcelli had an opportunity to review both the 2015 Agreement and the Terms of Use. Kirsanov Decl. ¶ 8. These materials stated that it was the user's "sole responsibility to review and abide by all of the terms and conditions of the Membership Agreement and all applicable service terms and conditions, as amended from time to time." Def. Mem. at 6.

In July 2016, Porcelli upgraded to a "Sophisticated Membership." In signing up for this tier of membership, Porcelli once again had to acknowledge and accept the terms and conditions of a membership agreement, which similarly included a mandatory arbitration clause. Kirsanov Decl. ¶¶ 12–13. Porcelli automatically renewed his Sophisticated Membership in July 2017 and July 2018. *Id.* ¶ 16. As with the prior membership agreements, the agreements for 2017 and 2018 each contained a mandatory arbitration clause. Def. Mem. at 7. The pertinent provision of the 2018 Agreement, the operative agreement, provided as follows:

> Any claim or dispute between the parties and/or against any agent, employee, successor, or assign of the other, whether related to this Agreement, any of the Terms and Conditions or the relationship or rights or obligations contemplated herein, including the validity of this clause, shall be resolved exclusively by binding arbitration by the American Arbitration Association, under the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes then in effect, by a sole arbitrator.

2018 Agreement at 10.

## C. Porcelli's Claims

Porcelli claims that he initially found JetSmarter's services to be excellent. Compl. ¶ 11. In July 2016, he upgraded his membership to a "Sophisticated Membership," which, he alleges, entitled him to additional benefits, such as guaranteed, pre-assigned preferential seating, a dedicated concierge, and free catered meals. *Id.* ¶ 12. Porcelli claims that Sheridan tried to convince Porcelli to sign up for an even more expensive, three-year program, but Porcelli declined. *Id.* ¶ 13. Porcelli remained content with JetSmarter's services for the rest of the first year and renewed his membership twice, in July 2017 and again in July 2018. *Id.* ¶¶ 16, 18. Each time he attempted to renew, Sheridan attempted to upsell him, but he rejected those offers and renewed for one year. *Id.*

During the 2017 membership year, Porcelli realized that helicopter services that were promised as part of his package were not being offered. When questioned about the lack of such services, Sheridan informed Porcelli that due to an accident, helicopter services had been temporarily suspended. *Id.* ¶ 17.

Less than two months after his 2018 renewal, Porcelli claims, JetSmarter eliminated the token system through which Porcelli could fly for free within the United States, imposing instead a pay-per-flight sytem. *Id.* ¶ 19. Porcelli alleges that he reached out to Sheridan, and Yerovi responded to Porcelli's inquiry by explaining that the pay-per-flight program would provide him $2,000 in monthly credit that could be applied to the cost of travel. *Id.* ¶ 20. Porcelli claims that seat tickets regularly cost around $2,500; therefore, this new system "substantially diminished" the value of the program. *Id.* When Porcelli asked to be refunded for his membership, he claims that an unidentified JetSmarter representative informed him that such an option was not available to him. *Id.* ¶ 21.

On October 9, 2018, Porcelli claims, Yerovi informed him that he could convert his membership to "Signature Plus," but Porcelli declined and explained that he was not interested in any plan that deviated from the terms of his original plan. *Id.* ¶¶ 23–24. Porcelli alleges that, notwithstanding this refusal to convert his membership, JetSmarter did so anyway, rendering the program "completely unusable for him." *Id.* ¶ 23.

### D. Procedural History

On February 13, 2019, Porcelli filed his Complaint in the Supreme Court of New York, County of New York. On March 22, 2019, defendants removed this case to federal court. Dkt. 4.

On March 27, 2019, defendants filed a motion to dismiss and compel arbitration, Dkt. 7; a supporting memorandum of law, Dkt. 8 ("Def. Mem."); supporting declarations of Ronald Giller, Dkt. 9, Jenna Gushue, Dkt. 10, and Mikhail Kirsanov, Dkt. 11; and a proposed order, Dkt. 12.

On March 29, 2019, the Court directed plaintiff to file any opposition by April 17, 2019. Dkt. 16. To date, plaintiff has made no such filing.

## II. Applicable Legal Standards Under the Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate disputes." *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983) (internal quotation marks omitted)). Congress enacted the FAA to reverse "centuries of judicial hostility to

arbitration agreements" and "to place arbitration agreements upon the same footing as other contracts." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (internal quotation marks and citation omitted).

In resolving a claim to compel arbitration, this Court must determine: (1) whether the parties entered into an agreement to arbitrate; (2) if so, the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration. *See Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008).

On a motion to compel arbitration under the FAA, "the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun*, 316 F.3d at 175. "[W]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule on the basis of that legal issue and avoid the need for further court proceedings." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (internal quotation marks omitted).

The party moving to compel arbitration "must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order). The moving party need not "show initially that the agreement would be *enforceable*, merely that one existed." *Id.* (emphasis in original). Thereafter, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000)).

## III. Discussion

Defendants argue that, because each membership agreement required Porcelli to arbitrate his claims, the Court should either issue an order compelling arbitration or stay the case pending resolution of the class arbitration. Porcelli has not filed any opposition to defendants' motion.

In deciding whether the parties' dispute is arbitrable, the Court must answer two questions: "(1) whether the parties agreed to arbitrate, and if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391 (2d Cir. 2015). Both requirements are clearly met here. Accordingly, the Court grants defendants' unopposed motion to compel arbitration.

First, defendants submit sufficient, indeed convincing, documentary evidence of a valid arbitration agreement between the parties. This consists of the initial 2015 Agreement, to which Porcelli agreed when he originally signed up for JetSmarter's services, and all ensuing membership agreements into which Porcelli entered with JetSmarter during his membership. *See* Dkts. 11-5, 11-7, and 11-8. Each iteration of the Membership Agreement contains a clause requiring mandatory binding arbitration of "[a]ny claim or dispute between the Parties." Dkt. 11-5 at 6; Dkt. 11-7 at 10; Dkt. 11-8 at 10. In addition, when Porcelli originally signed up for his membership and when he upgraded his membership, he checked a box to indicate that he accepted the terms of JetSmarter's Membership Agreement. The Second Circuit has made clear that such "clickwrap" agreements can serve as valid consent to arbitrate because in checking a box the user must affirmatively assent to the terms of the agreement. *See Meyer v. Uber Technologies*, 868 F.3d 66, 75 (2d Cir. 2017).

Second, the question of whether the 2018 Membership Agreement, or any prior membership agreement, covers the claims raised in Porcelli's underlying Complaint is a question

7

for the arbitrator. As the Supreme Court has explained, "[P]arties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (internal quotation marks omitted). Here, each version of the Membership Agreement required that "any" dispute be resolved through arbitration. "When the parties' contract delegates the arbitrability question to an arbitrator . . . a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

Finally, as to whether to dismiss this action in light of the binding arbitration clause in each of the membership agreements, or to stay these proceedings pending arbitration, the Second Circuit recently resolved that question. It held that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). Such a stay has been requested here, and a stay will expedite this case by enabling prompt arbitral resolution of Porcelli's claim and deferring any appellate review until after the arbitration has concluded. Accordingly, the Court stays this case pending arbitration.

## CONCLUSION

For the foregoing reasons, the Court refers Porcelli's claims to arbitration and stays the action pending the outcome of arbitration.

The parties are directed to submit a joint status letter to the Court every 90 days, measured from the date of this decision, advising the Court as to the status of arbitration proceedings.

The Court respectfully directs the Clerk of Court to close the motion pending at Dkt. 7.

SO ORDERED.

/s/ Paul A. Engelmayer
Paul A. Engelmayer
United States District Judge

Dated: June 5, 2019
       New York, New York